OPINION
{¶ 1} Phil K. Gregory appeals from a judgment of the Dayton Municipal Court, which found him guilty of thirty-nine counts of unlawfully and knowingly failing to obey the legal order of a nonresidential building maintenance inspector. The trial court sentenced Gregory to sixty days in jail on eighteen of the thirty-nine counts, with the sentences suspended on the conditions that he be placed on probation for twelve months and comply with the city's proposed plan for abatement. The trial court also fined Gregory $500 on each count and suspended all but $1,000 in fines. ($250, rather than $500, was suspended on four of the counts). The suspended portion of the fines was subject to the same conditions as the suspended jail time.
 {¶ 2} The City of Dayton's evidence established the following facts. Gregory was the owner of a three-story brick building located at 1173-1177 W. Third Street in Dayton. In May 2001, a nonresidential building maintenance inspector issued an order relating to several building code violations affecting the structural integrity and safety of the building, which apparently had not been used in some time. The inspector sent the order by certified mail to Gregory and indicated that Gregory should comply with the order by June 30, 2001. Gregory did not appeal from the order or take any steps to comply with it.
 {¶ 3} In the late summer of 2001, a different inspector, Jennifer Watson, took over the case. She testified in detail at the trial about the problems with the building and presented pictures of it. Watson described the most serious violation as "structural members" (R.C.G.O. 99.51), which referred to the fact that the roof and floors of the building had collapsed into the basement. According to both inspectors, this condition made the exterior walls of the building unstable and made them likely to fall inward or outward. The building was surrounded by an alley, a parking lot, and sidewalks, and was in close proximity to the street. The parking lot was owned by another business and not by Gregory. Thus, the possible collapse of the walls created a danger of injury and property damage.
 {¶ 4} The inspectors also cited problems with window glazing (R.C.G.O. 99.59), decorative features (R.C.G.O. 99.55), and facades (R.C.G.O. 99.61). Window glazing referred to the fact that the windows were not intact, which allowed damage to the inside of the building from the weather. Decorative features and facades referred to exterior features of the building that were in danger of or in the process of falling off, with a risk of causing injury or property damage. The offenses were continuing violations for which Gregory could be cited each day.
 {¶ 5} Watson testified that, between August 2001 and October 2002, Gregory had made no repairs, improvements, or attempts to secure the property. She stated that none of the floors were intact and that the absence of the roof was apparent from the street. In the performance of her duties, Watson also observed that mortar was damaged and missing from the bricks on the building, creating a risk that individual bricks could fall out and that the walls could collapse. She noted a tree growing out of the bricks on the second floor of the building. Watson met with Gregory at one point, but he had no plan or explanation for the state of the building at that time.
 {¶ 6} Members of the Non-Residential Building Maintenance Board of Appeals and of the Dayton Housing Appeals Board testified that Gregory had not filed an appeal from the May 2001 order that he bring the building into compliance with the building ordinances.
 {¶ 7} In December 2002, Gregory was charged with thirty-nine "housing/zoning" violations. He pled not guilty, and a trial date was set for March 12, 2003. On the day of trial, neither Gregory nor his attorney appeared at the appointed time. When they did appear, Gregory's attorney requested a continuance, which the trial court denied after hearing arguments from the attorneys. Gregory was convicted and sentenced as discussed supra.
 {¶ 8} Gregory raises three assignments of error on appeal.
 {¶ 9} "1. The trial court judge abused his discretion by not granting defendant's motion for continuance."
 {¶ 10} Gregory claims that the trial court erred in failing to grant a continuance on the day of trial. The reasons cited for the need for the continuance were the death of counsel's father more than two months earlier, trials of other cases, a pending criminal action against the attorney for failure to pay child support, the large number of counts involved in this case, and the need to take pictures at the property in question.
 {¶ 11} The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of discretion. State v.Unger (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
In rejecting the request for a continuance, the trial court cited several factors. The court noted that the reasons cited for the requested continuance should have been apparent at least a week before the hearing. The court also observed that the case had been pending for over three months and that counsel had been prepared to go to trial over issues related to the same property in the common pleas court several weeks earlier. The court further found that taking pictures would be of limited value to Gregory, considering that the city was prepared to present pictures. It was unpersuaded by Gregory's argument that the large number of counts required extensive preparation because many of the counts alleged the same offenses on different dates. In sum, the court's assessment was that "this particular matter on the building [had] gone on too long."
 {¶ 12} In our view, the trial court clearly did not abuse its discretion in refusing to grant a continuance. The proffered reasons for the requested continuance were weak, the untimeliness of the request showed a lack of respect for the time of the others involved in the proceedings, including the city's four witnesses who were prepared to testify, and the building presented an ongoing hazard. The trial court acted reasonably in denying the motion for a continuance.
 {¶ 13} The first assignment of error is overruled.
 {¶ 14} "2. The defendant was denied effective assistance of counsel."
 {¶ 15} Gregory contends that he was denied the effective assistance of counsel by the trial court's failure to grant a reasonable continuance for trial preparation and by his attorney's failure to adequately prepare a defense. We addressed the trial court's refusal to grant a continuance under the first assignment of error, so we will address only whether trial counsel failed to prepare a defense adequately herein.
 {¶ 16} We evaluate ineffective assistance of counsel arguments in light of the analysis set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Bradley, 42 Ohio St.3d at 141-42.
 {¶ 17} After the testimony on direct examination of each of the city's witnesses, defense counsel declined to conduct cross-examination and renewed his motion for a continuance. The defense called no witnesses of its own.
 {¶ 18} We will assume, for the sake of argument, that defense counsel's claimed lack of preparedness to proceed with the trial violated his duty to his client and fell below an objective standard of legal representation, thus satisfying the first prong of the Strickland test. Even so, we cannot conclude that Gregory was denied the effective assistance of counsel, because there is no basis upon which we can conclude that the outcome of the trial was affected by the alleged ineffectiveness. Based upon the pictures of the property offered into evidence by the city, there can be no doubt that the building violated the city's ordinances regarding structural members, window glazing, decorative features, and facade. It seems very unlikely that Gregory could have offered any contradictory evidence or any explanation that would have prevented the trial court from finding violations of the city's ordinances, particularly in light of the danger that the building posed to others. Moreover, Gregory has failed to make any specific argument as to what his attorney should have or could have done that would have been helpful to his defense. As such, we must conclude that Gregory was not prejudiced by his attorney's conduct.
 {¶ 19} The second assignment of error is overruled.
 {¶ 20} "3. The sentence in this case will result in The defendant's incarceration due to an inability to pay, which is Unconstitutional."
 {¶ 21} Gregory claims that the trial court abused its discretion in sentencing and fining him as it did, and that the sentences and fines violate the Constitution because he cannot afford to refurbish the property, which is the condition of his probation and of the suspension of the sentences and fines.
 {¶ 22} Suffice it to say that there is no evidentiary support for Gregory's claim of poverty.
 {¶ 23} Furthermore, given Gregory's inexplicable record of neglect of the property and his patent disregard of the danger to public health and public safety, we cannot say that the court abused its discretion in imposing the sentences and levying the fines that it did. The fines and sentences were authorized by law — see R.C. 2929.21(B) and (C) — and, as the city points out, the approximately 44 months incarceration, all of which was suspended, could not exceed 18 months if actually imposed in the future. R.C. 2929.41(B)(1).
 {¶ 24} Finally, the unsuspended portion of the fines, for which Gregory is immediately responsible, is $1,000, payable in $50 per month installments.
 {¶ 25} On the record before us, we find no abuse of discretion. Should Gregory's probation be revoked, we trust that the trial court will act in a constitutional manner, based on the then existing circumstances, as shown by the evidence presented at that time.
 {¶ 26} The third assignment of error is overruled.
 {¶ 27} The judgment of the trial court will be affirmed.
Brogan, J. and Young, J., concur.